IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

IN RE:

Dolores Ann Walker,                           No. 3:19-bk-33182-SHB
Debtor.                                       Chapter 13

## TOBBY WALKER'S BRIEF IN SUPPORT OF OBJECTION TO CONFIRMATION

Tobby Walker ("Walker"), hereby files his Brief in Support of Tobby Walker's Objection to Confirmation of Plan ("Objection") [Doc. 24].

In his Objection [Doc. 24], Walker asserted that the Debtor's Plan should not be confirmed because:

1. Debtor's Plan was not proposed in good faith as per 11 U.S.C. § 1325(a)(3);

2. Creditors will receive less under the Debtor's plan that they would receive in a Chapter 7 per 11 U.S.C. § 1325(a)(4);

3. Debtor's Plan does not provide for payment of all disposable income per 11 U.S.C. § 1325(b)(1)(B);

4. Debtor's Plan is not feasible under 11 U.S.C. § 1325(a)(6);

### INTRODUCTION

The Debtor has previously filed a bankruptcy Petition, Case No. 17-bk-32484 and now files this Petition simply to avoid complying with her obligations to her former husband, Walker, related to their marital home at 1465 Blankenship Road, Washburn, Tennessee ("Home"). Further, as evident throughout all bankruptcy proceedings since 2016, the Debtor has absconded with funds that were to be paid to satisfy the mortgage

obligation on the former marital Home, for which Walker remains liable on the promissory note and mortgage. This present filing was simply a means by the Debtor to again attempt to preclude Walker from proceeding with his present Complaint against the Debtor in the Grainger County Chancery Court related to the Home loan.

## FACTS

1.  On July 7, 2008, a Final Decree of Divorce (Exhibit 1) was entered in the Fourth Circuit Court for Knox County, Tennessee, Dolores Ann Walker v. Tobby Shane Walker, Docket No. 110141 ("Fourth Circuit Court Action"), incorporating a Marital Dissolution Agreement (the "MDA") and Permanent Parenting Plan for the children.

2.  Pursuant to Walker's Petition for Civil Contempt and Modification of Child Support in The Fourth Circuit Court Action and upon a hearing held on September 16, 2015, the Fourth Circuit Court entered an Order on October 20, 2015 (Exhibit 2). As part of the Order, Walker was awarded a judgment against the Debtor in the amount of $5,124.00, awarding Walker a judgment on a remaining debt of $30,317.00 and granted Walker a lien on the property owned by Debtor. The Fourth Circuit Court ordered the Debtor to refinance the mortgage indebtedness on the home so as to remove Walker's name and release him from all of the mortgage debt in the period of sixty (60) days from September 16, 2015 to be extended upon hearing for thirty (30) additional days in order to finalize the refinancing. (See Exhibit 2).

3.  In Paragraph 8 of the October 20, 2015 Order (Exhibit 2), the Fourth Circuit Court ordered that if the indebtedness on the Home was not refinanced within the prescribed time, the adjoining 36-acre tract of unimproved real property owned by the Debtor was to be sold immediately and the proceeds used to pay on the indebtedness

2

owing on the Home and to reduce the debt to enable the Debtor to refinance the mortgage and release Walker from the mortgage debt.

4. On November 13, 2015, without any notice or disclosure, the Debtor sold the unimproved parcel of property described in the October 20, 2015 Order to the Debtor's brother and sister-in-law, which transaction was listed in the bankruptcy schedules as being sold for $50,000. A copy of the Warranty Deed, showing consideration of $55,000, is attached hereto as Exhibit 3.

5. The Debtor did not use the sale proceeds to pay off the indebtedness owing on the Home as ordered by the Fourth Circuit Court. The Chase Mortgage debt for which Walker was a co-debtor has not been refinanced to remove him from this obligation.

6. On January 14, 2016, despite selling the 36acre tract on 11/13/15, Debtor filed a Motion for Additional Time filed in Fourth Circuit Court (Exhibit 4) requesting additional time to finalize the sale of the property and refinancing of the mortgage. The Debtor represented to the Fourth Circuit Court that the property had not yet been sold and thus she represented that she had not received $55,000 for the property. This representation was false.

7. In the Motion for Additional Time, (Exhibit 4) the Debtor stated in pertinent part as follows:

> 3. The Movant has attempted to refinance the residence. In fact, she applied for the refinancing in August 2015. The mortgage company agreed that effective February 3, 2016, that if she made three (3) payments on-time and paid a lump sum of monies on the house then the refinancing would take place. Therefore, Movant put the thirty-six (36) acre tract of unimproved real property on the market and has sold the property. The property is being sold for $50,000.00 minus the land taxes and a lien. The Movant will receive approximately $40,000 from the sale of said property. The bulk of said moneys will

3

> be used to pay down the note on the residence. The residence has a mortgage of $54,000.00 owed as of January 2016.
>
> 4. The Movant has taken every step she can take to get the residence refinanced and/or sell the property.
>
> 5. The Movant needs additional time in which she can <u>*finalize the sale of the property and the refinancing of the mortgage*</u>. (emphasis added)

8.  The Warranty Deed, Exhibit 3, executed on November 13, 2015, provides that the consideration for the sale of the property was $55,000.00.

9.  The Debtor failed and refused to use the proceeds of the sale of the property to pay down the debt on the Home, and/or to refinance the debt to remove Walker from same.

10. While a Motion for Contempt was pending in the Fourth Circuit Court, the Debtor filed on August 10, 2017 in this Court her first Chapter 13 bankruptcy case, Case # 17-bk-32484.

11. In Case # 17-bk-32484, the Debtor testified in her creditor's meeting on September 14, 2017 that she had received the sale proceeds for the 36acre tract and did not pay any on the mortgage. Debtor conceded that at all times in the Fourth Circuit Court case she was represented by counsel.

12. The Debtor continues to live in the Home and Walker remains obligated on the debt, affecting his credit while also maintaining an equitable interest in the Home.

13. On April 4, 2018, Walker filed a Motion for Relief from Stay in Case # 17-bk-32484, [Doc. 55] to commence a criminal proceeding against the Debtor for contempt and failure to comply with the October 20, 2015 Order in the Fourth Circuit Court of Knox County, Tennessee. At a hearing on May 2, 2018, the Court ordered the parties to file

4

joint stipulations and briefs in support by May 31, 2018. [Doc. 63]. A Joint Stipulation of Facts, Documents and Issues was filed [Doc. 65], and the Motion for Relief of Stay was fully briefed by the parties [Docs.66, 68]. The Court did not dispose of the Motion for Relief of Stay.

14. On May 23, 2018, the Trustee filed a Motion to Dismiss Case No. 17-bk-32484.

15. On July 11, 2018, an Order Dismissing the Debtor's Chapter 13 Bankruptcy Case No. 17-bk-32484 was entered [Doc. 71].

16. On July 19, 2018, Walker filed his Petition for Criminal Contempt with the Fourth Circuit Court of Knox County, Tennessee, which was served by a process server on Debtor on July 20, 2018. On July 19, 2018, Walker also filed a Motion to Force Sale of Residence in order to start a process to remove Walker as co-debtor on the mortgage on the Home, where he has not lived from many years and to require Debtor to comply with the Order of Fourth Circuit Court, which Order contemplated that Debtor would sell property, reduce the indebtedness, and remove Walker from his obligations under the mortgage.

17. On July 25, 2018, Debtor filed in this Court in Case # 17-bk-32484 her Motion to Set Aside or Vacate Dismissal [Doc. 75].

18. On August 13, 2018, the Debtor then filed to withdraw her Motion to Set Aside or Vacate the Dismissal, [Doc. 86].

19. On January 14, 2019, Case No 17-bk-32484 was closed.

20.　On or about September 12, 2019, Walker filed an action in the Grainger County Chancery Court against the Debtor again related to the Home and indebtedness, [Exhibit 5].

21.　Based on Walker's equitable interest in the Home and the Debtor's violation of the Fourth Circuit Order, including her retention of the $55,000.00, Walker sought for the Grainger County Chancery Court to pursuant to Tenn. Code Ann. § 29-27-101 *et seq.*, to declare the rights, titles and interests of the parties in the Home and order that the Home be sold, and the proceeds, after satisfying all liens and expenses of the sale, if any, be divided among the parties in accordance with their respective rights.

22.　Without responding to the Grainger County Chancery Court action, the Debtor commenced this present Chapter 13 bankruptcy case, Case # 19-bk-33182.

23.　The Debtor remains living in the Home. Walker remains obligated on the mortgage and note for the Home. The Debtor has and continues to refinance the Home mortgage to remove Walker. The Debtor has sold and retained for her own use the 36-acre tract of property that Walker was awarded a lien and for which proceeds were to be used to pay off the mortgage.

## ARGUMENT

1.　<u>A determination of a debtor's good faith in proposing a plan in good faith under 11 U.S.C. § 1325(a)(3) is determined by a totality of the circumstances, specifically including the Debtor's honesty, disclosure, and efforts to repay her creditors.</u>

To be confirmed, a debtor's plan must be proposed in good faith. 11 U.S.C. § 1325(a)(3). Courts in the Sixth Circuit have established "an infinite number of factors" that might weigh in the "good faith equation" under § 1325(a)(3). <u>In re Okoreeh-Baah,</u>

836 F.2d 1030, 1033 (6th Cir. 1988)). These factors remain unchanged in post-BAPCPA cases. In re Upton, 363 B.R. 528, 535 (Bankr. S. D. Ohio 2007).

The "good faith" test in the Sixth Circuit requires consideration of the totality of the circumstances. In re Barrett, 964 F.2d 588, 591 (6th Cir. 1992). Among the circumstances to be considered in determining whether a plan has been proposed in good faith include the following "the sincerity with which the debtor has petitioned for relief" and "the frequency with which the debtor has sought relief before in bankruptcy". In re Alt, 305 F.3d 413, 419 (6th Cir. 2002) (citing In re Barrett, 964 F.2d at 592). Good faith is a fact-specific and flexible determination. Id. at 419.

In In re Wagner, 342 B.R. 766 (Bankr. E. D. Tenn. 2006), the creditor argued that the debtor's chapter 13 plan should not be confirmed because it was not proposed in good faith under §1325(a)(3) or filed in good faith under §1325(a)(7). Id. at 773.

This Court explained the applicable good faith standard:

> All debtors are required to file and proceed in their bankruptcy cases in good faith, and in making a good faith determination, the court should consider the totality of the circumstances, based upon the Debtor's past and present circumstances, by considering the following factors: (1) her motivation for filing for bankruptcy; (2) whether this is the first or subsequent filings; (3) the types of debts and how the Debtor has dealt with her creditors; (4) whether the proposed payments are a mockery to other debtors; (5) the burden of administering the plan; and (6) the Debtor's prospects for rehabilitation.

Id. at 773 (citing In re Glenn, 288 B.R. 516, 519-20 (Bankr. E.D. Tenn. 2002) (citing In re Barrett, 964 F.2d 588, 589 (6th Cir. 1992); In re Sexton, 230 B.R. 346, 351 (Bankr. E.D. Tenn. 1999)). In In re Wagner, this Court did not distinguish between the good faith standards in regard to proposing a plan or filing a petition. Id. at 773; see also In re Hall,

346 B.R. 420, 426 (Bankr. W. D. Ky. 2006) (concluding that the good faith standard for § 1325(a)(3) and § 1325(a)(7) is identical)).

As the Alt Court noted, a factor considered in assessing a debtor's good faith is "whether the debtor has been forthcoming with the bankruptcy court and the creditors." 305 F.3d at 419 (citing In re Love, 957 F.2d 1350 (7th Cir. 1992)).

Another key inquiry for determining good faith is "whether the debtor is seeking to abuse the bankruptcy process." In re Cusano, 431 B.R. 726, 730 (6th Cir. BAP 2010) (citing In re Alt, 305 F.3d at 419). "The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding the Chapter 13: <u>a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources</u>." In re Okoreeh-Baah, 836 F.2d at 1033) (emphasis added).

Accordingly, a debtor's showing of honesty to the Court and the Trustee, along with the evident purpose underlying his or her plan, constitute significant factors in determining good faith.

In determining good faith, bankruptcy courts also scrutinize whether debtors are making an "honest effort to repay [their] creditors." In re McGillis, 370 B.R. 720, 750 (Bankr. W. D. Mich. May 15, 2007), as explained by the Bankruptcy Court:

> I conclude that proposing a plan in good faith today under Section 1325(a)(3) means the same as what it means under Section 1325(a)(3) pre-BAPCPA, that the debtor is to make an honest effort to repay his creditors, for the underlying purpose of a Chapter 13 plan has always been "the sincerely-intended repayment of pre-petition debtor consistent with the debtor's available resources." Moreover, I conclude that Section 1325(b) affords no relief to debtors from this responsibility. Section 1325(b) is a hazard, not a harbor. Its avoidance does not mean clear sailing. Rather, all debtors still must establish that their plans exhibit the good faith demanded by Section 1325(a)(3).

8

Id. at 750 (citations omitted); see In re Owsley, 384 B.R. 739, 750-51 (N. D. Tex. March 31, 2008) ("[f]or above-median debtors, compliance with the good faith requirement does not begin and end with mathematical adherence to section 1325(b)" due to other factors bearing upon the good faith question, including "the timing of the bankruptcy petition, the debtors' motives in filing the petition, how the debtors' actions affected creditors, the debtors' treatment of creditors before and after the petition, and the whether the debtors have been forthcoming with creditors and the court").

A filing of a second Chapter 13 case, such as this filing by the current Debtor, while not prohibited, is subject to increased scrutiny for bad faith. In re Monte, 526 B.R. 397, 403 (Bankr. D. N. M. Feb. 25, 2015). The Bankruptcy Court in In re Monte emphasized that even if not prohibited outright, "the second case is scrutinized carefully to ensure it does not constitute an abuse of the bankruptcy process or a "bad faith" filing." Id. at 403; see also In re Sanford, 403 B.R. 831, 842 (Bankr. N. Nev. 2009) ("When a debtor files a second successive case, the court must examine all of the filings together and consider 'the result achieved by such filings review against the statutory requirements").

In this matter, the Debtor has been less than forthcoming with this court and specifically Walker. As set forth in the factual section, it is clear that the Debtor has and continues use this process to simply delay and prevent her deliberate, deceitful, intentional and fraudulent actions as to Walker and the mortgage debt from being litigated and determined against the Debtor. This present filing was simply filed for the express purpose of preventing Walker's action in the Grainger County Chancery Court from proceeding to trial. The Debtor herein has not filed this Plan to present to the Court a "sincerely-intended repayment of pre-petition debt consistent with the debtor's available

9

resources." In re Okoreeh-Baah, 836 F.2d at 1033) (emphasis added). In all, the Debtor has shown no interest in completing a Plan; rather, as shown herein, the Debtor only seeks bankruptcy relief when her misdeeds are being brought before a state court for determination and judgment.

As outlined above, under this law, the facts in this case support a finding of a lack of good faith in the proposing and filing of Debtor's plan.

## CONCLUSION

WHEREFORE, for the reasons outlined above and, in his Objection, Tobby Walker respectfully requests that the Court sustain his objections to confirmation of the Debtor's plan.

Respectfully submitted this the 10th day of February, 2020.

> By: /s/ W. Tyler Chastain
> W. TYLER CHASTAIN (BPR #016029)
> Bernstein, Stair & McAdams LLP
> 116 Agnes Road
> Knoxville, Tennessee 37919
> (865) 546-8030
> wtylerc@bsmlaw.com

## CERTIFICATE OF SERVICE

    I hereby certify that a true and exact copy of the foregoing Brief in Support of Objection to Confirmation of Chapter 13 Plan has been served upon the following individuals by placing same in the U.S. Mail, postage prepaid (USM) or electronically (ECF):

        Delores Ann Walker (USM)
        1465 Blankenship Road
        Washburn, Tennessee 37888

        John Newton, Esq. (ECF)
        Law Offices of Mayer & Newton
        1111 Northshore Drive
        Suite S-570
        Knoxville, Tennessee 37919

        Gwendolyn M. Kerney (ECF)
        P. O. Box 228
        Knoxville, Tennessee 37901-0228

This the 10th day of February 2020.

        /s/ W. Tyler Chastain
        W. TYLER CHASTAIN