## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

DOLORES ANN WALKER
fka DOLORES ANN NICELY
fka DOLORES ANN COFFMAN
fka DOLORES COFFMAN WALKER
fka DELORES ANN WALKER

Case No. 3:19-bk-33182-SHB
Chapter 13

           Debtor

## M E M O R A N D U M

**APPEARANCES:**    JOHN P. NEWTON, JR., ESQ.
                    Law Offices of Mayer & Newton
                    1111 Northshore Drive, Suite S-570
                    Knoxville, Tennessee  37919
                    Counsel for Debtor

                    W. TYLER CHASTAIN, ESQ.
                    Bernstein, Stair & McAdams LLP
                    116 Agnes Road
                    Knoxville, Tennessee  37919
                    Counsel for Tobby Walker

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is confirmation of Debtor's proposed Chapter 13 Plan and the objection by Tobby Walker, who is Debtor's ex-husband and to whom Debtor owes $95,992.00 in connection with the parties' property distribution in their 2008 divorce.

## I. INTRODUCTION

Debtor initiated the instant Chapter 13 bankruptcy case, her third since August 2016,[1] on September 30, 2019. [Doc. 1.]  Her proposed Chapter 13 Plan provides that Mr. Walker's judgment lien will be avoided such that he will be paid as a general unsecured creditor, who will be paid "pro rata on a funds available basis after payment of all other separately-classified claims." [Doc. 2 at ¶¶ 3.4, 5.1.]  Mr. Walker and the Chapter 13 Trustee objected to confirmation of Debtor's proposed plan. [Docs. 24, 28.]  Both objections were based in lack of good faith under § 1325(a)(3) and (a)(7) and infeasibility under § 1325(a)(6), and Mr. Walker's objection also raised "best interest" under § 1325(a)(4) and "disposable income" under § 1325(b)(1)(B). [*Id.*]  The Chapter 13 Trustee withdrew her objection just before the evidentiary hearing. [Doc. 47.]

The Court held the confirmation trial on February 19, 2020, at which Mr. Walker clarified that his only remaining grounds for objection to confirmation of Debtor's Chapter 13 Plan are whether the plan was proposed in good faith and whether the petition was filed in good faith as required by 11 U.S.C. § 1325(a)(3) and –(a)(7), respectively.  Based on the evidence

---

[1] Debtor filed her first Chapter 13 bankruptcy petition on August 16, 2016 (Case No. 3:16-bk-32452-SHB ("Case No. 1")), and she filed her second Chapter 13 bankruptcy petition on August 10, 2017, six days after dismissal of her first case (Case No. 3:17-bk-32484-SHB ("Case No. 2")).

adduced at trial and Debtor's prior cases,[2] the Court will deny confirmation of the proposed

Chapter 13 Plan.[3]

## II.  FACTS

The following chronology informs the Court's analysis of whether Debtor has met the

good faith requirements of Chapter 13.

The Knox County Circuit Court ("Divorce Court") entered the Final Decree in the

parties' divorce on July 7, 2008 ("Final Decree"), incorporating the parties' Marital Dissolution

Agreement executed on February 25, 2008 ("MDA").  The parties had been married

approximately five years.  As a result of the Final Decree and MDA, Mr. Walker was divested of

his interest in two parcels that were owned together by the parties, and he quitclaimed to Debtor

his interest in both properties.

According to Debtor, one of the properties is the home in which she was raised and in

which she has lived as an adult since she was 22 years old (1465 Blankenship Road, Washburn,

Tennessee ("Home")).  The other jointly owned property is an adjoining, thirty-six-acre

unimproved tract ("Vacant Property").  Debtor's father had deeded both properties to Mr.

Walker and Debtor at the same time that he deeded other property to Debtor's sister and her

husband with provisions intended to ensure the property would eventually pass to his

grandchildren and, thus, stay in his family.  After the parties took ownership of the Home, they

---

[2] Federal Rule of Evidence 201 permits the Court to take judicial notice of documents filed in Debtor's bankruptcy cases. *See In re Morton*, No. 3:15-bk-30892-SHB, 2015 WL 5731859, at *1 (Bankr. E.D. Tenn. Sept. 30, 2015); *In re Leonard*, No. 09-32725, 2009 WL 1475138, at *2 (Bankr. E.D. Tenn. May 22, 2009).

[3] This Memorandum constitutes findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure, made applicable to contested matters by Rule 9014(c) and 7052 of the Federal Rules of Bankruptcy Procedure.

took out a mortgage on the Home in 2005, using the loan proceeds to add an extra bedroom and bathroom.

The Final Decree and MDA required Debtor to pay to Mr. Walker 156 monthly payments of $427.00 in exchange for his divestiture of the properties. After Debtor failed to make payments to Mr. Walker from August 2014 through August 2015, Mr. Walker sought relief from the Divorce Court. Debtor testified that she had not paid the monthly payments to Mr. Walker for many years, and he had not paid child support to her during that time. She testified that in 2016, Mr. Walker started paying child support such that she was then required to make payments to him.

On October 20, 2015, however, the Divorce Court issued an Order ("2015 Order") finding as follows:

> 3. [Debtor] failed to pay all but one payment to [Mr. Walker] in the amount of $427.00 each month as required by paragraph 27 of the [MDA] for the period beginning in August, 2014, through August, 2015, for a period of thirteen (13) months, for a total amount of $5,124.00 ($427.00 x 12). [Mr. Walker] shall be awarded a judgment against [Debtor] in the amount of $5,124.00, and he may collect this judgment as provided by law.

> 4. [Mr. Walker] is owed a remaining balance on the debt of $30,317.00 (this total amount includes the above sum of $5,124.00).

> 5. [Mr. Walker] shall be permitted to file a lien on all property owned by [Debtor].[4]

> 6. The [MDA] does not provide for acceleration of the remaining balance of the debt. [Debtor] has the obligation to make timely monthly payments on this debt and she will be subject to sanctions by this court if she fails to do so.

> 7. [Debtor] shall have sixty (60) days from September 16, 2015, to refinance the indebtedness on the [Home] removing [Mr. Walker]'s name and releasing him from all of the mortgage debt. This period may be extended, upon a hearing, for thirty (30) additional days in order to finalize any pending refinancing.

---

[4] Debtor's Chapter 13 Plan in this case states that Mr. Walker recorded the 2015 Order in Grainger County on December 3, 2018. [Doc. 2 at ¶ 3.4.]

8. In the event that the indebtedness on the [Home] is not refinanced within the time prescribed, the adjoining [Vacant Property], owned by [Debtor] which is unencumbered, shall be sold immediately. All of the proceeds shall be paid on the indebtedness owing on the [Home] and shall reduce such debt to enable [Debtor] to refinance the mortgage debt and release [Mr. Walker] from the debt.

9. [Debtor] shall retain the [Home], and the Court will not order it sold at this time.

10. [Mr. Walker] was required to pay $1,021.00 to the Internal Revenue Service as additional federal tax resulting from [Debtor]'s nonpayment of the debt to Bank of America. [Mr. Walker] is awarded a judgment against [Debtor] in the amount of $1,021.00. He may collect this judgment as provided by law.

. . . .

12. [Mr. Walker] is awarded his reasonable and necessary attorney fees as required by Paragraph 12 of the [MDA]. His attorney shall submit an Affidavit detailing his attorney fee claim and absent an agreement, the Court shall conduct a hearing to determine the amount to be awarded.

13. Counsel for [Mr. Walker] shall prepare a letter for each of the three (3) credit reporting agencies stating [Mr. Walker] has fully complied with each requirement of his obligation and requirement of the [MDA] and the Final Decree . . . , [Debtor] has assumed the debt obligation to Chase Mortgage and that [*sic*] she is solely responsible for that debt and she has agreed to hold [Mr. Walker] harmless from the indebtedness.

14. The evidence presented fails to prove beyond a reasonable doubt that [Debtor] is guilty of civil contempt and the request for contempt is dismissed.

15. The costs of this cause shall be taxed two-thirds (2/3) to [Debtor] and one-third (1/3) to [Mr. Walker].

[2015 Order (Tr. Ex. 2).]

Although the 2015 Order was not entered until October 20, Circuit Judge Gregory S. McMillan announced his decision at the September 16 hearing. Debtor acknowledged before this Court that she was fully aware of the Divorce Court's ruling concerning the refinancing

requirement and the directive that if the refinancing was delayed beyond the deadline, the Vacant

Property was required to be sold.

Notwithstanding Debtor's understanding of the Divorce Court's ruling, fifty-eight days

after the September 16, 2015 hearing (and twenty-three days after entry of the 2015 Order),

Debtor sold the Vacant Property to her sister and brother-in-law on November 13, 2015.[5]  The

purchase price was $55,000.00, and Debtor received net proceeds of approximately $40,000.00.

At the time of sale, Debtor had made no arrangements to refinance the mortgage on the Home.

She testified that she had inquired through the years about refinancing the mortgage but because

of her poor credit and reduced income following the divorce, she could not get approval for

refinancing.[6]

The sixty-day period to refinance the mortgage as required by the 2015 Order expired on

November 15, 2015 (i.e., two days after Debtor sold the Vacant Property).  Nearly two months

later, on January 14, 2016, Debtor, through her divorce attorney, filed a Motion for Additional

Time ("January 2016 Motion"), relying on the provision in the 2015 Order for a thirty-day

extension to "finalize any pending refinancing," asserting:

> 3.  That [Debtor] has attempted to refinance the [Home]. If [sic] fact, she
> applied for the refinancing in August 2015.  The mortgage company agreed that
> effective February 3, 2016, that if she made three (3) payments on-time and paid a
> lump sum of monies on the house then the refinancing would take place.[7]
> Therefore, [Debtor] put the [Vacant Property] on the market and has sold the

---

[5] The Warranty Deed was recorded on November 17, 2015, sixteen days before Mr. Walker recorded his judgment lien on December 3, 2015. [*See* Warranty Deed (Tr. Ex. 3), Chapter 13 Plan (Doc. 2 at ¶ 3.4).]

[6] Debtor could provide no specifics of any efforts to refinance the mortgage.  The Court finds that Debtor lacks credibility on this point, especially given that she purchased and financed at least five vehicles between 2012 and 2019. *See* discussion *infra* at pp. 15-17.

[7] Presumably, this statement references a Mortgage Loan Modification, which was not refinancing to remove Mr. Walker's liability but a solution to Debtor's default in payments to avoid foreclosure.  At trial, the parties did not reference the Loan Modification Agreement executed by both Debtor and Mr. Walker on April 28, 2016, which re-amortized the mortgage on the Home over 480 months at 5.374% interest, with a monthly payment of $276.90. [Claim No. 9-1 at pp. 28-33.]  The new principal balance under the modification agreement was $54,591.40. [*Id.* at p. 29.]

property. The property is being sold for $50,000.00 minus the land taxes and a lien. [Debtor] will receive approximately $40,000.00 from the sale of said property. The bulk of said monies will be used to pay down the note on the [Home]. The [Home] has a mortgage of $54,000.00 owed as of January 2016.

4. That [Debtor] has taken every step she can take to get the [Home] refinanced and/or sell the [Vacant Property].

5. That [Debtor] needs additional time in which she can finalize the sale of the [Vacant Property] and the refinancing of the mortgage.

[January 2016 Motion (Tr. Ex. 4).] Debtor asked the Divorce Court to set a hearing and to grant her an additional 120 days to resolve all pending issues.

Although Debtor understood that the net sale proceeds were to be used to pay down the mortgage or to pay to Mr. Walker on the judgment awarded to him by the 2015 Order, Debtor spent the $40,000.00 in proceeds in other ways. She testified that she did make payments to catch up the mortgage, and the mortgage creditor's proof of claim filed in Case No. 1 reflects a December 1, 2015 payment that covered the escrow for monthly payments due April 1, 2015, through January 1, 2016.[8] Although the loan history provided with the claim only reflects escrowed funds, the original note required a monthly payment on principal and interest totaling $415.11.[9] Thus, based on the credits to escrow provided in the escrow history in Case No. 1 of $6.00 per month for those ten months,[10] the Court calculates a December 1, 2015 payment by Debtor in the total amount of $4,211.10.

---

[8] JP Morgan Chase Bank, National Association Proof of Claim, Case No. 1 (Bankr. E.D. Tenn. Jan. 31, 2017), Claim No. 11-1, at p. 7.

[9] *Id.*, Part 2, at p. 1.

[10] *See id.* at p. 7.

Other than the December 2015 payment on the mortgage, Debtor testified that she used the $40,000.00 for repairs to the Home (estimated by Debtor at $11,000.00 to $13,000.00), two surgeries to her eyes (estimated by Debtor at $12,000.00 to $14,000.00), and the purchase and setup of a mobile home for her adult daughter on the real property on which the Home sits (estimated by Debtor at $18,000.00).[11]  Debtor testified before this Court that the sale proceeds "most likely" were spent within sixty days of the sale on November 13, 2015 (i.e., before the 2016 Motion was filed).

Debtor acknowledged at the confirmation trial that the January 2016 Motion contained false statements, but she said that her divorce attorney "knew everything, including the sale."  Although Debtor did not testify about a hearing on the January 2016 Motion, Mr. Walker's testimony is undisputed that the Divorce Court held a hearing on the 2016 Motion and that Debtor was present and failed to correct the misstatements or otherwise reveal to the court that the Vacant Property had already been sold, she already had spent the proceeds, and there was no refinancing arrangement pending.

On June 30, 2016, Mr. Walker filed a Petition for Contempt against Debtor in the Divorce Court.  [Joint Stipulations of Facts, Documents and Issues, Case No. 2 (Bankr. E.D. Tenn. May 11, 2018), ECF No. 65.]  Before the hearing could be held on Mr.

---

[11] Debtor testified that she does not own the mobile home.  When Debtor listed her property on Schedule A/B in Case Nos. 1 and 2, she added the following note to the section in which she disclosed the Home: "Home and 1.5 acres, with a 1999 Singlewide Mobile Home (value: $10,000) also sitting on property. Map 28 Parcel 15.03." [Schedule A/B: Property, Case No. 2 (Bankr. E.D. Tenn. Aug. 10, 2017), ECF No. 1 at p. 19; Schedule A/B: Property, Case No. 1 (Bankr. E.D. Tenn. Aug. 16, 2016), ECF No. 1 at p. 19.]  Likewise, on Schedule C in both Case No. 1 and Case No. 2, Debtor included the following description of property in which she claimed a homestead exemption under Tennessee law of $25,000: "1465 Blankenship Road Washburn, TN 37888 Grainger County Home and 1.5 acres, with a 1999 Singlewide Mobile Home (value: $10,000) also sitting on property. Map 28 Parcel 15.03." [Schedule C: The Property You Claim as Exempt, Case No. 2 (Bankr. E.D. Tenn. Aug. 10, 2017), ECF No. 1 at p. 25; Schedule C: The Property You Claim as Exempt, Case No. 1 (Bankr. E.D. Tenn. Aug. 16, 2016), ECF No. 1 at p. 25.]  Notably, in the instant case, Debtor revised the note that she added to the sections of Schedules A/B and C to reflect: "Home and 1.5 acres, with a 1999 Singlewide Mobile Home (value: $10,000) also sitting on property *which is owned by Debtor's daughter and son-in-law*. Map 28 Parcel 15.03." [Doc. 1 at pp. 19, 25 (emphasis added).]

Walker's Petition for Contempt,[12] Debtor filed Case No. 1. [Voluntary Petition for Individuals Filing for Bankruptcy, Case No. 1 (Bankr. E.D. Tenn. Aug. 16, 2016), ECF No. 1.]

In Case No. 1, Debtor scheduled Mr. Walker as an unsecured creditor in the amount of $66,000.00. [Schedule E/F, Case No. 1 (Bankr. E.D. Tenn. Aug. 16, 2016), ECF No. 1, at p. 29.]  Mr. Walker did not participate in Debtor's 2016 bankruptcy case. Her Chapter 13 Plan was confirmed quickly without any objections having been filed. [Order Confirming Chapter 13 Plan, Case No. 1 (Bankr. E.D. Tenn. Sept. 28, 2016), ECF No. 22.]  The confirmed plan provided for Debtor to pay the mortgage on the Home directly to the creditor at $420.11 per month. [*Id.* at p. 4.]  Debtor was to make plan payments of $150.00 semi-monthly for a term of sixty months, plus tax refunds in excess of $1,500.00, which would pay an attorney's fee of $3,000.00 and a dividend to unsecured creditors of 1 to 5%.  [*Id.* at pp. 2, 4.]

On June 29, 2017, the Chapter 13 Trustee moved to dismiss Case No. 1 because Debtor accrued an arrearage of $1,000.00 on plan payments, and the Chapter 13 Trustee amended her motion on July 5, 2017, to add Debtor's failure to provide her 2016 tax return or refund to the Trustee. [Trustee's Motion to Dismiss and Trustee's Amended Motion to Dismiss, Case No. 1. (Bankr. E.D. Tenn. June 29, 2017, and July 5, 2017), ECF Nos. 42, 43.]  At the hearing, Debtor did not present a defense to dismissal because, as she testified in this case, she wanted to refile Chapter 13 to bring the mortgage, for which payments were delinquent, into the Plan.  Case No. 1, thus, was dismissed on

---

[12] Debtor disclosed in her petition that the hearing on Mr. Walker's petition for contempt was set for August 19, 2016 (i.e., three days after the Chapter 13 petition was filed). [Voluntary Petition for Individuals Filing for Bankruptcy, Case No. 1 (Bankr. E.D. Tenn. Aug. 16, 2016), ECF No. 1, at p. 11.]

August 4, 2017. [Order for Dismissal and Disbursement of Funds, Case No. 1. (Bankr.
E.D. Tenn. Aug. 4, 2017), ECF No. 47.]

     Six days later, Debtor filed Case No. 2. [Voluntary Petition for Individuals Filing
for Bankruptcy, Case No. 2 (Bankr. E.D. Tenn. Aug. 10, 2017), ECF No. 1.] She again
scheduled Mr. Walker as an unsecured creditor to whom she owed $66,000.00. [*Id.* at p.
35.] Debtor also disclosed that the Petition for Contempt in the Divorce Court was
pending and again had been set for hearing (on October 6, 2017). [*Id.* at p. 11.]

     Debtor's proposed plan estimated the mortgage arrearage at $3,000.00. [Chapter
13 Plan, Case No. 2 (Bankr. E.D. Tenn. Aug. 10, 2017), ECF No. 2 at p. 3.] Indeed, the
filed mortgage claim reflected an arrearage of $3,087.41, of which $1,661.40 was
principal and interest. [JP Morgan Chase Bank, National Association Proof of Claim,
Case No. 2 (Bankr. E.D. Tenn. Dec. 13, 2017), Claim No. 9-1, at pp. 2, 4.] Thus, with a
contractual payment (as reduced by the mortgage loan modification of April 2016) of
$276.92, Debtor was six months behind on the mortgage when she filed Case No. 2 on
August 10, 2017.

     Mr. Walker objected to confirmation of Debtor's proposed Chapter13 Plan, which
initially included no treatment for Mr. Walker's claim. [Chapter 13 Plan, Case No. 2
(Bankr. E.D. Tenn. Aug. 10, 2017), ECF No. 2.] Debtor's proposed Plan provided for a
semi-monthly payment of $350.00 plus tax refunds exceeding $1,500.00, for a dividend
to unsecured creditors of 1 to 5%. [*Id.* at pp. 1, 3.] Mr. Walker's objection was based on
11 U.S.C. § 1325(a)(3), (4), (6), and-(b)(1)(B). [Objection to Confirmation of Chapter 13
Plan, Case No. 2 (Bankr. E.D. Tenn. Sept. 15, 2017), ECF No. 22.] Mr. Walker also
objected because "Debtor failed to disclose all monies received from transfer of real

properties subject to lien in Grainger County Register of Deeds and per Order in Knox

County Circuit Court, Division IV." [*Id.*]

The Chapter 13 Trustee also objected to Debtor's proposed Plan on the grounds

that the Plan did not provide for payment of all disposable income (11 U.S.C. § 1325(b))

and was infeasible (11 U.S.C. § 1325(a)(6)).  [Chapter 13 Trustee Objection to

Confirmation, Case No. 2 (Bankr. E.D. Tenn. Sept. 15, 2017), ECF No. 23.]  After

several status hearings on the two objections to confirmation of Debtor's Chapter 13

Plan, the parties reached an agreement, and the Plan was confirmed on February 14,

2018. [Order Confirming Chapter 13 Plan, Case No. 2 (Bankr. E.D. Tenn. Feb. 14, 2018),

ECF No. 47.]  The compromise reached between Debtor, the Chapter 13 Trustee, and Mr.

Walker added treatment for Mr. Walker to Debtor's Plan, requiring a monthly payment of

$85.00 for total payments of $2,525.00 plus interest at 5%. [*Id.* at p. 3.]  Debtor also

agreed that she would not object to Mr. Walker's claim. [*Id.*]  All other originally

proposed plan terms remained the same.[13] [*Compare* Chapter 13 Plan, Case No. 2

(Bankr. E.D. Tenn. Aug. 10, 2017), ECF No. 2, *with* Order Confirming Chapter 13 Plan,

Case No. 2 (Bankr. E.D. Tenn. Feb. 14, 2018), ECF No. 47.]

Notably, following the filing of an adversary complaint against Debtor by the

Tennessee Department of Human Services ("TDHS"), which sought a nondischargeable

judgment in the amount of $6,070.00 for Debtor's "obtaining Food Stamp benefits

through false statements and misrepresentations . . . from January 2011 through

---

[13] Debtor's initial proposed Chapter 13 Plan in Case No. 2 also included the following provision:  "If the Debtor fails to make a Chapter 13 payment, then upon certification by the Chapter 13 Trustee, the case shall be dismissed without further notice or hearing"  (the "Certification Provision"). [Chapter 13 Plan, Case No. 2 (Bankr. E.D. Tenn. Aug. 10, 2017), ECF No. 2.]

December 2011 and January 2013 to April 2013" [Complaint, Tenn. Dep't of Human

Servs. v. Walker, Adv. No. 3:17-ap-03040 (Bankr. E.D. Tenn. Nov. 3, 2017), ECF No. 1,

at ¶¶ 2-3], Debtor entered into an Agreed Order with TDHS for a nondischargeable

judgment in the amount of $6,070.00. [Agreed Order, Tenn. Dep't of Human Servs. v.

Walker, Adv. No. 3:17-ap-03040 (Bankr. E.D. Tenn. Nov. 28, 2017), ECF No. 10.]  In

the Agreed Order, Debtor expressly acknowledged that she had obtained "money . . .  by

false pretenses, a false representation, or actual fraud . . . ." [*See id.* (citing 11 U.S.C. §

523(a)(2)).]

On April 4, 2018, Mr. Walker filed a Motion for Relief from the Automatic Stay

("Motion for Relief"), seeking permission for him "to commence and continue criminal

contempt proceedings against Debtor" in the Divorce Court and to pursue "a modification

of [Mr.] Walker's child support obligation" based on "a significant change in Debtor's

income, resulting from the sale of [the Vacant P]roperty and the retention of all such

proceeds in violation of" the 2015 Order. [Motion for Relief, Case No. 2 (Bankr. E.D.

Tenn. Apr. 4, 2018), ECF No. 55.]  Debtor having opposed the Motion for Relief and the

parties having informed the Court that the contested matter could be resolved on

stipulations and briefs, the Court entered a scheduling order and the parties proceeded

with their filings.  [*See* Case No. 2 (Bankr. E.D. Tenn.), ECF Nos. 63, 65, 66, 68.]

Before the Court could decide the Motion for Relief, because Debtor accrued an

arrearage in plan payments of approximately $1,173.00, on July 10, 2018, the Chapter 13

Trustee certified the case for dismissal pursuant to the Certification Provision.

[Certificate for Dismissal, Case No. 2 (Bankr. E.D. Tenn. July 10, 2018), ECF No. 70.]

As a result, Case No. 2 was dismissed on July 11, 2018. [Order Dismissing Case, Case

No. 2 (Bankr. E.D. Tenn. July 11, 2018), ECF No. 71.]

Debtor initially filed a Motion to Set Aside or Vacate Dismissal ("Motion to Set

Aside") [Case No. 2 (Bankr. E.D. Tenn. July 25, 2018), ECF No. 75], asserting that

Debtor's employer had failed to pay her wages promptly and, when Debtor approached

her employer about it, she was fired. [*Id* at ¶ 2.] Debtor's Motion to Set Aside asserted

(without any sworn statement) that she had obtained new full-time employment and a

second job for supplemental income. [*Id.* at ¶ 3.] The Chapter 13 Trustee (as well as Mr.

Walker) objected to the Motion to Set Aside, asserting:

> [Debtor] attaches no sworn affidavit to her Motion to [Set Aside] . . .
> in support of her representations that the failure to timely make payments
> was the fault of her employer, Cedar Bluff Dental Clinic, to timely make
> payroll payments to her.  Not only does she fail to attach any sworn affidavit,
> she does not submit any paystubs or other similar documentation to
> substantiate her allegations.   In fact, the Chapter 13 Trustee based on
> independent investigation submits that [Debtor]'s employer, Cedar Bluff
> Dental Clinic, disputes [Debtor]'s unsworn allegations, and that [Debtor]'s
> employment was terminated effective July 18, 2018 through which said time
> period her wages were paid current.

[Chapter 13 Trustee's Objection to Debtor's Motion to Set Aside or Vacate Dismissal

Order, Case No. 2 (Bankr. E.D. Tenn. Aug. 6, 2018), ECF No. 81, at p. 2.]  After an

initial hearing on Debtor's Motion to Set Aside at which the Court set an evidentiary

hearing for August 22, 2018 [Order, Case No. 2 (Bankr. E.D. Tenn. Aug. 9, 2018), ECF

No. 84], Debtor withdrew the motion on August 13, 2018.[14] [Withdrawal, Case No. 2

(Bankr. E.D. Tenn. Aug. 13, 2018), ECF No. 86.]

---

[14] When the Court asked Debtor at the confirmation trial in this case why she withdrew the motion to vacate the
dismissal, she could not articulate a reason.

Case No. 2 having been dismissed on July 11, 2018, Mr. Walker filed a Petition

for Criminal Contempt and a Motion for Forced Sale of Residence ("Motion for Sale") in

the Divorce Court on July 19, 2018. [Motion for Sale (Tr. Ex. 6).]  At the hearing on the

petition and Motion for Sale, held in September or October 2018, the Divorce Court

declined to incarcerate Debtor and denied the Motion for Sale, explaining to Mr. Walker

that only a Grainger County court could order sale of the Vacant Property located in

Grainger County.

Mr. Walker took no further action concerning the Vacant Property until

September 12, 2019, when he filed a Complaint in Grainger County Chancery Court,

seeking a sale of the Vacant Property under Tennessee Code Annotated § 29-27-101. [Tr.

Ex. 5.]  Debtor filed her third Chapter 13 case on September 30, 2019. [Doc. 1.]

Debtor testified that in the months before she filed the Chapter 13 petition in this

case, she was trying to pay the mortgage on the Home.  The mortgage creditor's proof of

claim in this case, however, reflects that following the July 2018 dismissal of Case No. 2,

Debtor made the following payments on the mortgage:

| Date | Amount |
|------|--------|
| October 12, 2018 | $506.50 |
| November 15, 2018 | $506.50 |
| January 11, 2019 | $506.50 |
| February 27, 2019 | $1,054.55 |
| March 15, 2019 | $506.50 |
| May 10, 2019 | $506.50 |
| June 21, 2019 | $510.00 |
| June 28, 2019 | $510.00 |
| July 6, 2019 | $510.00 |
| August 9, 2019 | $537.55 |
| September 6, 2019 | $506.50 |

[JP Morgan Chase Bank, National Association Proof of Claim, Claim No. 9-1, at p. 5.]  Thus,

Debtor failed to pay *timely* any mortgage payment between Case No. 2 and this case, and she

skipped the December 2018 payment (making two payments in late February) and the April 2019

payment (making two payments in June). [*Id.*]  As a result, as of the September 30, 2019 filing of

her petition in this case, Debtor was delinquent in the total amount of $1,688.96 for fees and

escrow shortages. [*Id.* at p. 4.]

Notwithstanding these difficulties experienced by Debtor in paying the mortgage on the

Home, Debtor purchased a used car (a 2006 Volkswagen Beetle) on May 10, 2019, paying

$1,000.00 down. [Union Motors, LLC Proof of Claim, Claim No. 10-2, at p. 4.]  Although the

sales price of the car was only $5,553.34, and Debtor paid $1,000.00 down, Debtor financed (at

23.99%) a total of $6,561.34, which included the sales tax, title, and tag expense totaling $699.34

and the "document preparation fee paid to seller" in the amount of $2,412.00.  Thus, Debtor took

on the repayment obligation of $257.42 for 35 months beginning June 10, 2019.  Debtor testified

that she purchased 2006 Volkswagen because "the other one was worn out and repossessed."

Something is amiss in Debtor's various sworn statements filed in her three bankruptcy

cases concerning vehicles.  In Case No. 1, she scheduled a 2004 Jeep Liberty as unencumbered.

[Schedule A/B: Property and Schedule D: Creditors Who Have Claims Secured by Property,

Case No. 1 (Bankr. E.D. Tenn. Aug. 16, 2016), ECF No. 1, at pp. 20, 27-28.]  She also disclosed

in Case No. 1 a debt owed to American Credit Acceptance relating to the repossession of a

vehicle, although she did not indicate that the repossession had occurred in the one year before

the petition date. [*Id.* at p. 11; Schedule E/F: Creditors Who Have Unsecured Claims, Case No. 1

(Bankr. E.D. Tenn. Aug. 16, 2016, at p. 30.]  The claim filed by American Credit Acceptance

reflects that the repossessed vehicle was a 2006 Ford Mustang that Debtor had purchased on

March 17, 2012, under a Retail Installment Contract for financing of $16,058.00 at 24.5%, to be

paid over 72 months at $432.74 per month. [American Credit Acceptance Proof of Claim, Case

No. 1, Claim 2-1.] Another car creditor, Jefferson Capital Systems, LLC, filed a claim in Case

No. 1 related to a 2007 Ford Mustang purchased by Debtor on May 29, 2013, under a Simple

Interest Retail Installment Contract, financing $17,576.69 at 23.9% for 152 payments, at $215.99

bi-weekly.[15] [Jefferson Capital Systems, LLC Proof of Claim, Case No. 1, Claim 8-1.]

In Case No. 2, however, Debtor disclosed that she voluntarily surrendered for

repossession the 2004 Jeep Liberty (i.e., the car that was scheduled as unencumbered in Case No.

1) to Coffee Auto Sales in May 2017 – during the pendency of Case No. 1 in which no secured

claim was scheduled or treated.[16] Debtor did not schedule ownership of any vehicles in Case No.

2. [Schedule A/B: Property, Case No. 2 (Bankr. E.D. Tenn. Aug. 10, 2017), ECF No. 1 at p. 19.]

In the instant case, Debtor disclosed yet a different vehicle (a Chrysler Convertible) that

was repossessed by Dalton's Motors LLC in August 2019. [Voluntary Petition for Individuals

Filing for Bankruptcy, ECF No. 1, at p. 11.] She listed the debt on Schedule E/F as a deficiency

balance for the Chrysler Convertible, but she did not include the date the debt was incurred.[17]

[Schedule E/F: Creditors Who Have Unsecured Claims, ECF No. 1, at p. 36.]

Thus, in the eight years between entry of the Final Decree and this third bankruptcy case,

Debtor purchased and financed at least five vehicles between 2012 and 2019 while she failed to

make payments to Mr. Walker as required by the Final Decree or, alternatively, to refinance the

mortgage on the Home. In any event, Debtor apparently timely made payments on her most

---

[15] The proof of claim reflects a last transaction and last payment date of August 2, 2013, for the account that was opened sixty-five days earlier, on May 29, 2013. [Jefferson Capital Systems, LLC Proof of Claim, Case No. 1, Claim 8-1, at p. 4.]

[16] Debtor did not schedule any unsecured debt to Coffee Auto Sales; nor did the creditor file a claim either in Case No. 2 or the instant case. As a result, the Court cannot determine when the debt to Coffee Auto Sales was incurred.

[17] Dalton Motors LLC has filed no proof of claim in this case.

recent vehicle purchase before she filed her third petition because the car creditor's proof of claim shows no arrearage.[18]

To summarize, the foregoing facts evidence that each time Debtor sought bankruptcy protection, proceedings were pending in state courts relating to her failure to comply with the Final Decree and the 2015 Order. The Petition for Contempt filed on June 30, 2016, was pending when Case No. 1 was filed. That petition remained pending and had been set for hearing when Debtor filed Case No. 2. After Mr. Walker filed the Motion for Relief (seeking to renew the contempt proceedings in the Divorce Court) but before this Court could rule on the parties' stipulations and briefs, Debtor failed to make plan payments, resulting in automatic dismissal of Case No. 2 pursuant to the Certification Provision. That dismissal was effective July 11, 2018, and Mr. Walker filed a new Petition for Criminal Contempt in the Divorce Court eight days later. Only after that petition was served on Debtor did she file the Motion to Set Aside on July 25, 2018, later withdrawing that motion when the Chapter 13 Trustee objected and informed the Court that her independent investigation contradicted the Debtor's unsworn statements in the Motion to Set Aside. Finally, Debtor filed this case only after Mr. Walker served her with his complaint filed in Grainger County to force the sale of the Home.

## III. CONCLUSIONS OF LAW

Under § 1325(a)(3) and (7), debtors must file and proceed in their cases in good faith and, likewise, propose their plans in good faith, with an almost identical standard as cases concerning good faith and dismissal under § 1307(c). *See In re Hall*, 346 B.R. 420, 426 (Bankr. W.D. Ky.

---

[18] Notwithstanding that Debtor purchased her most recent vehicle a mere 143 days before she filed her third Chapter 13 Petition in this case, Debtor's proposed Chapter 13 Plan and the proof of claim she filed on behalf of the creditor appear to cram down the value of the vehicle to $3,500.00 in violation of the 910-day provision in the hanging paragraph of 11 U.S.C. § 1325(a). [Doc. 2, at ¶ 3.3; Claim No. 10-1.] Inexplicably, the creditor filed its own proof of claim seeking only $3,500.00 and did not object to confirmation of the Chapter 13 Plan. [Claim No. 10-2.]

2006).  "In the confirmation context, the chapter 13 debtor bears the burden of proof on both of these good faith requirements." *In re Gomery*, 523 B.R. 773, 784 (Bankr. W.D. Mich. 2015) (citing 11 U.S.C. § 1325(a)(3), -(a)(7); *Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1126 (6th Cir. 1990)).  The Court's discretionary determination of a debtor's good faith requires examination of the totality of the circumstances and is based on past and present circumstances. *See Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 738 (6th Cir. 1994); *In re Glenn*, 288 B.R. 516, 519-20 (Bankr. E.D. Tenn. 2002).

> Courts generally focus on the following factors when determining good faith:
>
> (1) the debtor's income; (2) the debtor's living expenses[;] (3) the debtor's attorney fees; (4) the expected duration of the Chapter 13 plan; (5) the sincerity with which the debtor has petitioned for relief under Chapter 13; (6) the debtor's potential for future earning; (7) any special circumstances the debtor may be subject to, such as unusually high medical expenses; (8) the frequency with which the debtor has sought relief before in bankruptcy; (9) the circumstances under which the debt was incurred; (10) the amount of payment offered by debtor as indicative of the debtor's sincerity to repay the debt; (11) the burden which administration would place on the trustee; and (12) the statutorily-mandated policy that bankruptcy provisions be construed liberally in favor of the debtor.

*Soc'y Nat'l Bank v. Barrett (In re Barrett)*, 964 F.2d 588, 592 (6th Cir. 1992).  Other relevant factors include "the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt[,] and whether any inaccuracies are an attempt to mislead the court[.]" *In re Caldwell*, 851 F.2d at 859 (citation omitted).  Courts also look to the following:

> the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors;[19] the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

---

[19] The Court notes that the focus is on Debtor's actions, not the action or inaction of creditors.  Thus, it matters not for the good-faith analysis that Mr. Walker did not pursue sale of the Vacant Property between the fall of 2018 and September 12, 2019.

*Alt v. United States (In re Alt)*, 305 F.3d 413, 419 (6th Cir. 2002) (citation omitted).

Weighing these factors — "which 'may circumstantially reflect the debtor's motivation,

and ultimately his "good faith,'" in seeking relief under chapter 13" — assists courts in

determining whether "the debtor's purpose in filing for chapter 13 relief is consistent with the

underlying purpose and spirit of chapter 13 – i.e., financial 'rehabilitation through repayment of

debt' – [and if] the filing is likely in good faith." *Condon v. Brady (In re Condon)*, 358 B.R. 317,

326 (B.A.P. 6th Cir. 2007) (internal citations omitted).

"While multiple filings are not, in and of themselves, improper or indicative of bad faith,

a history of multiple filings and dismissals may be construed as bad faith." *Cusano v. Klein (In

re Cusano)*, 431 B.R. 726, 735 (B.A.P. 6th Cir. 2010) (citing *In re Glenn*, 288 B.R. at 520).

> Bad faith can be demonstrated in a variety of ways, including serial filings with
> failure to make plan payments. *In re Grischkan*, 320 B.R. 654, 661 (Bankr. N.D.
> Ohio 2005). Other indicators include serial filers who "repeatedly [seek] the
> protections of the Bankruptcy Code in an effort to thwart the foreclosure efforts of
> [creditors]", and those who "frustrate[] the bankruptcy process," such as by failing
> to pay filing fees in installments and produce required documents." *In re Lee*, 467
> B.R. 906, 919 (B.A.P. 6th Cir. 2012); *see also In re Morris*, No. 3:10-BK-04143,
> 2010 WL 3943927, at *9-10 (Bankr. M.D. Tenn. Oct. 6, 2010) (failure to pay filing
> fee or file certificate of credit counseling were two of the facts in the court's
> decision to dismiss with prejudice). Repetition of the same conduct "strengthens
> the inference that the conduct was deliberate," and the court will "infer from a
> pattern of dismissals and refilings in unchanged circumstances willful failure to
> abide by orders of the court and an abuse of the bankruptcy process." *In re
> Nelkovski*, 46 B.R. 542-544 (Bankr. N.D. Ill. 1985).

*In re Wilcoxon*, No. 18-62228-rk, 2018 WL 6016540, at *3 (Bankr. N.D. Ohio Nov. 15, 2018)

(alterations in original).

The Court finds instructive here a review of several cases that are analogous to the facts

before this Court.

In *In re Garzon*, No. 18 B 26026, 2018 WL 6287986, at *1 (Bankr. N.D. Ill. Dec. 3,

2018), the debtor's ex-wife objected to confirmation based on an alleged lack of good faith in the

debtor's case filing and proposed plan and under the disposable income requirement.  The debtor

owed his ex-wife $10,000.00 as a divorce property settlement on which he was obligated to pay

$500.00 per month. *Id.*  The debtor failed to pay any installments and filed a Chapter 7 case

approximately four months after entry of the divorce judgment (apparently under a mistaken

understanding that the debt to his ex-wife would be discharged). *See id.*  After entry of discharge,

the ex-wife pursued the debtor in state court for contempt for failing to pay as required by the

divorce judgment. *Id.*  The contempt proceeding was continued for approximately ten months to

allow the debtor to purge his contempt, during which time the debtor sold his home and failed to

use any of the net proceeds to purge his contempt or pay on the divorce judgment, instead

choosing to pay down credit card debt, "overdue 'rent' payments," and medical bills, and to

make a down-payment on a new, more expensive home. *Id.*  The debtor then filed his Chapter 13

case in the month to which the contempt proceeding had been continued. *Id.*  The ex-wife's

unsecured claim represented 73% of the total unsecured debt when the petition was filed.[20] *Id.*

The debtor's Chapter 13 plan proposed to pay his ex-wife only 10.7% of her claim. *Id.* at n.3.

The debtor acknowledged that he "filed the case to 'seek relief' from 'the pending judgment for a

property settlement' entered in the divorce case." *Id.* at *2.

The *Garzon* court found that "since the divorce judgment was entered, [the debtor] has

been engaged in a concerted effort to stall [his ex-wife]'s collection efforts." *Id.*  The court

stated:  "[The debtor]'s latest bankruptcy case is a delay tactic, pure and simple, aimed at [his ex-

wife, who] is the only unsecured creditor in the case, holding 73% of the scheduled unsecured

debt and, because she alone filed a proof of claim, 100% of the unsecured debt to be paid under

---

[20] Here, adding Mr. Walker's debt of $95,992.00 to the unsecured claim total (including both priority and general unsecured claims) establishes total unsecured claims of $105,629.55, of which Mr. Walker's claim constitutes more than 90%.

[the debtor]'s plan." *Id.* at *4.  The court also noted that even though the debtor was not eligible

for a Chapter 13 discharge in the case under consideration (because of his recent Chapter 7

discharge), he would be eligible for a Chapter 13 discharge within the plan period such that he

could just wait out the four-year period under 11 U.S.C. § 1328(f)(1), dismiss the current case

voluntarily or by defaulting in plan payments, and refile for Chapter 13 protection and discharge.

*See id.*  The court rejected the debtor's argument that his petition and schedules were accurate,

even though accuracy of a debtor's filings is a factor in the good-faith determination. *See id.* at

*6.  "More telling," the court said, was

> the nature of [the debtor]'s underlying debt (owed to [his ex-wife] under their
> divorce judgment); his prepetition conduct (his failure to pay [his ex-wife], the
> contempt order against him, his concealment of the home sale, and his decision to
> pay other creditors when he could easily have paid [his ex-wife]); and, most
> important, the 'fundamentally unfair' chapter 13 case (no discharge possible) and
> proposed plan (minimal payments to [his ex-wife] beginning only after 20 months
> [after priority unsecured claims were paid], by which time [he] will be able to file
> a new case to discharge the debt).

*Id.* at *6 (citation omitted).

Although *Garzon* is distinguishable in that Debtor here is eligible for discharge at the end

of the Chapter 13 Plan term, the following principle still applies:  "When a case's sole object 'is

to delay (or defeat) a single judgment creditor,' with no benefit to the creditor body as a whole,

the case has been filed in bad faith." *Id.* at *5 (quoting *In re Liptak*, 304 B.R. 820, 836 (Bankr.

N.D. Ill. 2004)).  As the *Garzon* court concluded:  "In short, the totality of the circumstances

shows without doubt that [the debtor] is not 'really trying to pay' [his ex-wife], but is 'trying to

thwart' her." *Id.* at *6 (citation omitted).  Confirmation, thus, was denied. *Id.*

Perhaps the most closely analogous case to the case *sub judice* is *In re Brandland*, 570

B.R. 203 (Bankr. E.D. Va. 2017), in which the bankruptcy court denied confirmation for the

debtor's bad faith relating to his ex-wife and *sua sponte* dismissed the case.  The bankruptcy

court found that during pre-trial discovery in the divorce proceeding (which was tried

approximately twenty-eight months before the debtor filed for bankruptcy protection), before the

evidentiary hearing on equitable distribution, "[t]he [d]ebtor was clearly untruthful in his

deposition testimony" concerning his ownership of a business. *Id.* at 208. At a January 2014

hearing before the divorce court at which the judge issued his oral rulings in the case and valued

the debtor's one-third interest in the business, the debtor failed to disclose that by the December

2013 trial date approximately two weeks earlier, he already had agreed to sell back to the

original business owners the debtor's one-third interest for $150,000.00 – and that he had

received the funds for that purchase five days before the January 2014 hearing. *Id.* As a result of

the court's oral rulings at the January hearing, the parties left the courtroom and immediately

executed a "term sheet" in which the debtor agreed to pay his ex-wife $201,380.00 in annual

installments, and that term sheet was later incorporated into the final decree of divorce. *Id.* at

208-09. The debtor failed to disclose to his ex-wife when they executed the term sheet that he

had already agreed to sell his one-third interest back to the other owners and that he was holding

in a bank account the sale proceeds of $150,000.00. *Id.* at 209. The debtor paid his ex-wife only

$10,500.00 for her legal fees out of the sale proceeds. *Id.* When he failed to make the first

annual installment payment of less than $15,000,00 a mere five months later, the debtor was held

in contempt by the divorce court. *Id.* The debtor again withheld material information from the

divorce court when he filed a motion to amend the divorce decree without disclosing the sale or

that he had spent the proceeds before his first installment payment was due under the divorce

decree. *Id.*

      Three days before the debtor's second annual installment payment was due to his ex-

wife, the debtor filed his Chapter 13 petition. *Id.* at 210. The debtor's statements and schedules

contained several inaccuracies concerning insider payments, lawsuits, and transfers of property.
*Id.* The Chapter 13 plan proposed to pay unsecured creditors a total of 11%, which would result
in payment to the debtor's ex-wife of approximately $19,000.00 on her total claim, which was
scheduled at $187,000.00. *Id.* The bankruptcy court acknowledged that a desire to discharge an
equitable distribution obligation by choosing Chapter 13 over Chapter 7, "standing alone, [does
not] warrant a denial of confirmation or dismissal of this case. It is only when such an intent is
coupled with other bad faith conduct that the Court will deny confirmation or dismiss the case . .
. ." *Id.* at 218. Because of the debtor's pre-petition conduct, especially the repeated concealment
of the business interest and receipt and dissipation of the sale proceeds "in a plain effort to use
the funds for other purposes, while negotiating for and receiving additional time to pay the
equitable distribution award," the court sustained the ex-wife's good faith objection to
confirmation of the debtor's plan. *Id.* Although the court had previously denied the ex-wife's
motion to dismiss the case, the court *sua sponte* dismissed the case on finding that the debtor
could not remedy the good-faith problem by further amending the plan. *Id.* at 219.

Another bankruptcy court denied confirmation in *In re Bradley*, 567 B.R. 231 (Bankr. D.
Me. 2017), on finding the case filing was in good faith but the plan was not proposed in good
faith. The debtor's divorce decree required her to pay her ex-husband 15% of any lump-sum
workers' compensation settlement, but the debtor failed to pay her ex-husband from the
settlement of $155,000.00. *Id.* at 233. In response to her ex-husband's motion for contempt in
the divorce court, the debtor asked for relief from the divorce judgment, saying that she had
executed the agreement under coercion and duress. *Id.* The divorce court held the debtor in
contempt and imposed specific payment obligations under deadline, with which the debtor did
not comply. *Id.* The court held the debtor in contempt a second time, specifically finding that

she had disposed of the settlement by purchasing a new home and a new car, making home improvements, and giving $10,000.00 to each of her three children. *Id.* On the filing of a third contempt motion, the court found that the debtor had "elected to take on new responsibilities in lieu of fulfilling her existing obligation to [her ex-husband] to the greatest extent possible." *Id.* Eventually, the divorce court required the ex-wife to serve a two-day jail sentence and ordered her to pay a smaller sum to her ex-husband and provide him evidence that she had listed her home for sale by a date certain. *Id.* at 234.

Approximately one month after the debtor served her jail sentence, she filed a Chapter 13 petition. *Id.* Her largest financial obligation was the debt owed to her ex-husband. *Id.* The thirty-six-month plan proposed to pay only $1,212.00 to unsecured creditors (with her ex-husband being the only unsecured creditor to file a claim) and to strip her ex-husband's judgment lien on her home because it impaired her homestead exemption. *Id.* at 235, 239. The court found that the debtor had not filed her petition in bad faith merely because she was trying to avoid a period of incarceration relating to the contempt proceeding. *Id.* at 238. The court, however, was "troubled by [the debtor]'s steadfast refusal to comply with the state court orders prior to the bankruptcy, and her proposed plan or reorganization that affords [her ex-husband] a modest return while she retains exempt equity in the home and vehicle that she purchased, and her children retain the substantial sums gifted to them, with funds that could have been used to satisfy some or all of [her ex-husband]'s claim." *Id.* at 238. The court concluded that the plan was not proposed in good faith and that the debtor would need to propose a plan that would result in a fair distribution to her ex-husband for the court to confirm it: "Although the Court cannot compel [the debtor] to contribute exempt assets, to make payments extend beyond her applicable commitment period, or to negotiate plan contributions from her relatives, [she] cannot

meet the good faith plan requirement without making a sacrifice beyond that contemplated by the plan at issue here." *Id.* (citing *In re Wrobel*, 525 B.R. 211, 218 (Bankr. W.D.N.Y. 2015) ("Simply committing all of one's non-exempt assets and meeting the 'projected disposable income' test, does not compel a ruling . . . that a plan meets the good faith test of 11 U.S.C. § 1325(a)(3).")).

Another case with facts closely analogous to those here is *In re Rippe*, No. 12-10220, 2013 WL 5701605 (Bankr. N.D. Ind. Sept. 25, 2013). There, the ex-husband of the debtor objected to confirmation of the Chapter 13 plan, asserting that the plan was not proposed in good faith as required by § 1325(a)(3). *Id.* at *1. The marital property settlement agreement awarded the house and surrounding acreage to the debtor with a proviso that she refinance the mortgage to remove her ex-husband from the mortgage obligation. *Id.* She also received several rental properties that she also was required to refinance. *Id.* The agreement required the debtor to list the properties for sale if she could not obtain releases of her ex-husband's mortgage obligations. *Id.* By the deadline to refinance, the debtor's counsel filed "a notice of refinancing/sale of real estate" with the court that extended the deadline for listing the properties for sale, but that "transaction never closed and there [wa]s every reason to believe it was not a bona fide arrangement." *Id.* at *2. The debtor filed for bankruptcy relief under Chapter 13 on the day scheduled for a second contempt hearing against her. *Id.*

The debtor's plan proposed to pay all creditors, including her ex-husband, in full. *Id.* It provided for her to take steps to refinance or modify the mortgage debt on two properties and that if she failed to do so after two years, she would promptly list the properties for sale. *Id.* The debtor's ex-husband objected to confirmation presumably because he did not believe that she would fulfill her obligations under the proposed plan so that he would find himself in the same

position two years down the road. *Id.* The court noted: "Given the debtor's conduct prior to filing and her absolute right to dismiss this case, . . . that fear would be understandable." *Id.* Notwithstanding that the debtor was proposing payment in full of all creditors, the court concluded that the plan was not proposed in good faith:

> Admittedly, not all the relevant factors point in that direction. Nonetheless, when all the pieces of the puzzle are brought together, the court is presented with a picture lacking the good faith needed to approve what debtor proposes. She is not paying creditors to the best of her ability, she is trying to thwart them, particularly [her ex-husband].

*Id.*

Standing in contrast to *In re Rippe* and the other cases discussed above is *In re O'Neal*, No. 11-13535-WHD, 2012 WL 1940594 (Bankr. N.D. Ga. Apr. 13, 2012), in which a divorce court had ordered the debtor to pay $100,000.00 to his ex-wife, who was relieved of any responsibility for the mortgage and other obligations relating to the couple's home. *Id.* at *1. The debtor was entitled to retain any profit from a sale of the property so long as he paid his ex-wife in full under the terms of the divorce judgment. *Id.* The debtor sold the home in a "short sale" and borrowed funds from his mother to make the first payment due to his ex-wife under the judgment, but he never paid the remaining balance and, instead, filed for bankruptcy protection under Chapter 13. *Id.* The proposed Chapter 13 plan would have paid the debtor's ex-wife, who was the only unsecured creditor, a 10% dividend. The debtor's only secured claim, a mortgage on property in which the debtor held a 50% interest (which was awarded to her in the divorce), was to be paid by the debtor's mother, who was a co-debtor. *Id.* The debtor's ex-wife's objection to confirmation focused on the fact that the debt would have been nondischargeable under Chapter 7 and the debtor had no other creditors, as well as the debtor's timing in filing the petition. *Id.* at *6. The court found that the debtor had paid $25,000.00 of the debt immediately

after ordered to do so by the divorce judgment and that he was proposing to pay what he could afford to pay for at least three years and to discharge only what remained at the end of the plan payments. *Id.* The court found "no evidence or reason to suspect that the [d]ebtor acted in any egregious manner in connection with the divorce proceeding or thereafter." *Id.* at *7. The court concluded that the petition was filed and the plan was proposed in good faith. *Id.* at *10.

Here, on review of the relevant factors and considering the totality of the circumstances, the Court finds that Debtor failed to file this third bankruptcy case in good faith and that her Chapter 13 Plan has not been proposed in good faith. Specifically, the Court finds that the following factors overwhelmingly weigh against Debtor in the good-faith analysis: the frequency with which the debtor has sought relief in bankruptcy; the circumstances under which the debt was incurred; the amount of payment offered by Debtor to Mr. Walker as indicative of her sincerity to repay the debt; Debtor's pre-petition conduct concerning this debt, including her intentional concealment and misrepresentation of the facts to the Divorce Court and especially her actions in spending the proceeds from the sale of the Vacant Property without complying with the Final Decree, as well as her actions in "elect[ing] to take on new responsibilities in lieu of fulfilling her existing obligation to [her ex-husband] to the greatest extent possible," *In re Bradley*, 567 B.R. at 233; and Debtor's admitted motive in the timing of the filing of this and her prior two petitions. *See In re Alt*, 305 F.3d at 419; *In re Barrett*, 964 F.2d at 592. The Court also finds significant in its analysis of the totality of the circumstances Debtor's admission in the TDHS adversary proceeding during Case No. 2 that she had obtained "money . . . by false pretenses, a false representation, or actual fraud . . . ." [*See* Agreed Order, Tenn. Dep't of Human Servs. v. Walker, Adv. No. 3:17-ap-03040 (Bankr. E.D. Tenn. Nov. 28, 2017), ECF No. 10 (citing 11 U.S.C. § 523(a)(2)).]

For these reasons, the Court will sustain Mr. Walker's objection to confirmation, deny

confirmation of Debtor's Chapter 13 Plan, and dismiss this case because the Court finds that

Debtor cannot propose a plan that will comply with the requirements of 11 U.S.C. § 1325(a)(3)

and (a)(7). *See In re Brandland*, 570 B.R. at 219.

An Order consistent with this Memorandum will be entered.

FILED:  April 2, 2020

BY THE COURT

*s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE